**Edgar JACKSON, Realtor, et al., Appellants,**

v.

**Marjorie WILLIAMS, Appellee.**

**No. 7570.**

Court of Civil Appeals of Texas, Beaumont.

May 30, 1974.

**646**

John H. Akin, Austin, for appellants.

John W. Stayton, Jr., Austin, for appellee.

DIES, Chief Justice.

Appellee Marjorie Williams listed realty for sale with Jean Baldwin, an agent with broker Kinser-Shackelford, in October of 1970. Jean Baldwin put the house on multiple listings, and Blanche Taylor, agent with Edgar Jackson Realtor, secured a sales contract in the amount of $110,000 from William M. Day, purchaser. By previous agreement, the realtors intended to divide the real estate commission. The sales contract was contingent on purchaser securing an appraisal of the property equal to the purchase price.

An appraiser was shown the house. Later, on information from Day that the appraisal was for $103,000, Jackson returned the escrow deposit to Day ($5,000) with these words written by him across the same: "Void—Appraisal did not come up to $110,000, check returned 1–11–71."

Actually this was an untruth, though at the time unknown by Jackson. Marjorie Williams, having discovered the truth that the appraisal had been for $110,000, sued Day for specific performance and prevailed.

Edgar Jackson Realtor and Kinser-Shackelford Realtors, as plaintiffs, then brought suit against Marjorie Williams, as defendant, for the commission alleged due them under the sales contract, interest, and attorneys' fees.

Trial was to the court without a jury who found for the defendant Marjorie Williams, appellee herein, from which Edgar Jackson and Kinser-Shackelford, appellants, perfect this appeal.

Among the court's Findings of Fact and Conclusions of Law were:

"Prior to the return of the earnest money, Defendant Marjorie Williams told Mrs. Jean Baldwin not to return the earnest money without first obtaining a written appraisal valuing the property at less than $110,000.00. . . . By returning the earnest money without ob-

taining an appraisal and without so notifying Defendant in advance, in breach of the contract and in violation of Defendant's instructions, Plaintiffs breached their duty to keep Defendant fully informed of matters materially affecting the transaction and their duty not to do any act which might endanger the transaction which they (as real estate agents acting for Defendant in the sale of her property) owed to Defendant and they are thereby barred from recovering a commission from Defendant."

■ The finding that Marjorie Williams told Mrs. Baldwin not to return the earnest money without first obtaining a written appraisal is certainly supported by the evidence. Mrs. Baldwin was responsible under the Real Estate License Act, Art. 6573a, § 3.1, Vernon's Ann.Civ.St., to her client for all acts and conduct by any real estate salesman—Blanche Taylor or Edgar Jackson—associated with her. Instructions to her were instructions to Blanche Taylor and Edgar Jackson.

■ Therefore, it is our duty to affirm the trial court's judgment if this failure legally supports the judgment. Purnell v. Gulihur, 339 S.W.2d 86 (Tex.Civ.App., El Paso, 1960, error ref. n.r.e.):

"But it is a well-established rule of law that, where evidentiary facts are determined by the court, any doubts as to the facts raised by the evidence, and any view of the law which the court could have applied under the pleadings and the evidence, should be resolved in support of the judgment. *In such case, if there is any theory on which the appeals court can affirm the judgment, it has a duty to do so.* (339 S.W.2d 91) (emphasis supplied)

See Brown v. Grice, 357 S.W.2d 620 (Tex.Civ.App., Austin 1962, no writ); Hughes v. Grogan-Lamm Lumber Company, 331 S.W.2d 799, 803 (Tex.Civ.App., Dallas, 1960, error ref. n.r.e.).

In Restatement (Second) of Agency, § 385 (1958), we find:

"Unless otherwise agreed, an agent is subject to a duty to obey all reasonable directions in regard to the manner of performing a service that he has contracted to perform."

In § 469, Disloyalty or Insubordination as Defense:

"An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."

The Comment to this section states:

"An agent is entitled to no compensation for a service which constitutes a violation of his duties of obedience. See § 385. This is true even though the disobedience results in no substantial harm to the principal's interests and even though the agent believes that he is justified in so acting."

See also 3 C.J.S. Agency, §§ 288, 337; Moore v. Kelley, 162 S.W. 1034 (Tex.Civ. App., Amarillo, 1914, error ref.).

The instruction given by owner to her real estate agent in our case was reasonable, material, and, if carried out, could very well have obviated the long and expensive litigation she had with the purchaser, Day.

The judgment of the trial court is affirmed.

KEITH, Justice (concurring).

While I join in the affirmation of the judgment of the lower court in its entirety,

I place the affirmation as to Edgar Jackson and Blanche Taylor on these additional and slightly different grounds.

Jackson and his broker Blanche Taylor, seeking to recover a commission, were confronted with the rule of law so well stated many years ago by Chief Justice Phillips in Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 296 (1916):

> "It is a general doctrine that in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, *ready, able and willing* to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned." (emphasis supplied)

See also, Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422, 425 (1952), wherein Justice Sharp quoted the foregoing language in the body of the opinion. The rule there announced has continuing validity. Maberry v. Julian, 479 S.W.2d 770, 773 (Tex. Civ.App., Dallas, 1972, error ref. n.r.e.).

Conceding the fact that William M. Day, the only "purchaser" produced by Jackson or Taylor, was *able* to consummate the purchase, he was neither ready nor willing to do so. Only the District Court of Travis County, 167th Judicial District of Texas, aided by the Sheriff of Travis County executing an order of sale based on a final judgment, made Mr. Day into a "ready", but possibly still unwilling purchaser. The sheriff's efforts, and not those of Jackson and Taylor, changed Day's status from that of a prospective purchaser into the owner of Mrs. Williams' house. It cost Mrs. Williams more than five thousand dollars in attorneys' fees to bring about this change in Day's attitude toward her property. I cannot accept the argument that Jackson and Taylor satisfied the condition precedent

to a recovery of commissions under Chief Justice Phillips' holding. Day was not a purchaser "ready, able and willing to buy the property upon the contract terms."

Next, Justice Sharp, in Air Conditioning, Inc. v. Harrison-Wilson-Pearson, supra, quoted this language from 7 Tex.Jur. § 82, p. 479 (1930) [some of which now appears in 9 Tex.Jur.2d, Brokers, § 57, p. 818 (1969)]:

> " 'Although the broker may have been the person who brought the property to the attention of the buyer, or introduced the buyer to the owner, thereby initiating negotiations between them, yet he is not entitled to recover commission where it further appears that, after he had made an unsuccessful effort to induce the buyer to purchase the property and had ceased his efforts to accomplish that result, all without fault on the part of the owner, the sale was then made as the result of independent negotiations directly between the owner and the buyer, or through the medium of some other broker.' See Tex.Jur.Supp., p. 582, § 82."

Jackson and Taylor, without ascertaining the true facts, did all they could to relieve Day of his obligations to purchase Mrs. Williams' property. Jackson marked the contract void; Mrs. Taylor gave Day back his check *while trying to sell him another* house.

I now paraphrase the textbook language adopted by Justice Sharp so as to make it applicable to the case at bar:

> Mrs. Taylor "made an unsuccessful effort to induce the buyer [Day] to purchase the property and had ceased his [her] efforts to accomplish that result [by trying to sell Day another house], all without fault on the part of the owner [Mrs. Williams]."

Later, Mrs. Williams proceeded to act and "the sale was then made as the result of independent negotiations [in the courthouse in an adversary proceeding] directly between the owner and the buyer."

No plaintiff having shown himself entitled to recover all or any part of the commission, the trial court properly entered judgment for Mrs. Williams and I join in the affirmation thereof.

STEPHENSON, Justice (dissenting).

I respectfully dissent. I would allow Edgar Jackson to recover his percentage of the commission.

I think it is significant that the trial court found that only Jean Baldwin had received the instruction from Marjorie Williams not to return the earnest money without first obtaining a written appraisal. Marjorie Williams had testified she also gave that instruction to Edgar Jackson, but the trial court failed to make such a finding. All witnesses, other than Marjorie Williams, had testified that no such instruction was given.

The only legal basis for denying recovery in the majority opinion is that an agent is entitled to no compensation for conduct which is disobedient if such conduct constitutes a willful and deliberate breach of the contract. There is no finding in this case that Edgar Jackson was guilty of disobedience which was willful or deliberate.

The majority opinion makes no such contention, but denies recovery by Edgar Jackson because of Article 6573a, § 3.1. A careful reading of such article clearly indicates to me that it is intended to make a real estate broker responsible for the acts of his agents, which law has no application to the factual situation before us.

The trial court apparently attempted to bind Edgar Jackson by the notice to Jean Baldwin on the theory of "joint venture." The relationship between two real estate brokers in a multiple-listing situation completely fails to qualify in many aspects to be a "joint venture."